UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARVIN HARRISON | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 CV 4674 |
| | ) | |
| | ) | Honorable Marvin E. Aspen |
| | ) | Honorable Magistrate Judge Denlow |
| STATE OF ILLINOIS, DEPARTMENT | ) | |
| OF TRANSPORTATION, et. al., | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff, in his First Amended Complaint the Defendants, alleges the following:

**NATURE OF THE CASE**

1. This is an action seeking legal redress for workplace discrimination brought by the first (and to-date the only) African American to hold a Lead/Lead supervisor position in the Illinois Department of Transportation (IDOT) Emergency Traffic Patrol (ETP). On March 22, 2010, IDOT removed the Plaintiff from his position and responsibilities at ETP where he managed IDOT's first responder teams and transferred him to a maintenance yard where he supervised employees engaged in menial tasks. According to IDOT, it took this adverse employment action in response to race-based threats on the Plaintiff's life perpetrated by one or more subordinate employees. Thus, instead of disciplining the subordinate employee-perpetrators of alleged hate crimes, IDOT stripped the Plaintiff of his job duties and authority and transferred him to a position with greatly diminished responsibilities and lower pay and otherwise subjected him to adverse changes to the terms and conditions of his employment.

1

2.     Subsequent to filing this action Plaintiff was suspended based on pretextual grounds in retaliation for his opposition to unlawful discrimination.

3.     Plaintiff brings his claims pursuant to Title VII of the Civil Rights Act of 1964, 42U.S.C. §2000e et seq. ("Title VII"), 42 U.S.C. §1981 ("Section 1981"), 42 U.S.C. §1983 ("Section 1983"), and seeks declaratory and injunctive relief, back pay and other equitable and monetary relief, compensatory damages, and an award of attorney's fees, costs and expenses.

4.     Some counts of the original complaint were dismissed in their entirety after Defendants filed a motion to dismiss various counts of the complaint and Plaintiff voluntarily dismissed others. The remaining counts with the addition of new retaliation allegations are below and the exhibits attached to the original complaint are incorporated by reference.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the Plaintiffs' federal claims pursuant to 42 U.S.C. §2000e-5(f)(3) (Title Vll); and 28 U.S.C. §§1343(a)(3-4) and 28 U.S.C. §§1331 (all federal claims). The Court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. §1367(a).

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

7.     Plaintiff invoked and exhausted all mandatory pre-complaint administrative procedures by filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued right-to-sue letters and Plaintiff amended his complaint within 90 days of his receipt of the letter. True and correct copies of Charges of Discrimination/Retaliation and the Dismissal and Notice of Rights are attached.

## PARTIES

8. Plaintiff Marvin Harrison is an African-American citizen of the United States and resident of Woodridge, Illinois.

9. At all times relevant to the Complaint, Plaintiff was an "employee" of IDOT within the meaning of Title VII.

10. The Illinois Department of Transportation is a State-created governmental body created by and acting pursuant to Illinois law.

11. IDOT was Plaintiffs "employer" within the meaning of Title VII.

12. At all times relevant to the Complaint, Defendant William Grunloh was IDOT's chief of staff and an IDOT employee with the authority to direct Plaintiff's daily activities.

13. At all times relevant to the Complaint, the individual defendant acted under color of state law within the scope of his authority as an IDOT employee.

## FACTUAL ALLEGATIONS

14. Plaintiff has been an IDOT employee since February 1995. He was hired as a driver and, in 2002, rose to the position of Lead Worker at ETP.

15. On July 1, 2007, Plaintiff was promoted to the position of Lead/Lead Worker pursuant to the settlement of his claims in the *Feliciano* case. Plaintiff was the first, and is to-date the only, African American to have held the position in over 30yrs.

16. As Lead/Lead Worker at ETP, Plaintiff's performance met or exceeded IDOT's expectations.

17. As Lead/Lead Worker, Plaintiff reported directly to the ETP manager. His duties included

the supervision of nine lead workers and approximately 80 drivers who worked as first responders to traffic emergencies on the state's highways.

18. In August 2009, Plaintiff learned that a subordinate white ETP employee (Ralph Erne) had repeatedly used a racial slur (the "n" word) in reference to Plaintiff and had done so in the presence of several other ETP supervisors. In violation of IDOT policies and procedures, the supervisory employees failed to report the racial slurs to management or IDOT's Bureau of Civil Rights. Thus, when Plaintiff learned about the slurs directed against him, he informed IDOT's Bureau of Civil Rights Chief and upper management group.

19. Pursuant to IDOT procedures, the Bureau of Civil Rights was required to investigate the Plaintiff's civil rights complaint but instead Mr. Fulgenzi of the personnel department performed the investigation. Plaintiff was denied any information about how his complaint was being handled. On information and belief, the Civil Rights Bureau did not conduct any investigation of Plaintiffs civil rights complaint, and no discipline was ever meted out for the racial slurs or the failure of IDOT supervisors to report them.

20. Ignoring the substance of Plaintiff's civil rights complaint, IDOT instead assigned an employee in the personnel department to "investigate" "personnel issues" at ETP. Malek-Robinson was responsible for the investigation, which on information and belief, was conducted without the approval of either the chief counsel or the Civil Rights Bureau.

21. On information and belief, the instigating factor for the Malek-Robinson investigation was Plaintiff's complaint to the Civil Rights Bureau. Thus, rather than responding to a complaint of a civil rights violation by investigating the employee(s) who were alleged to have engaged in misconduct, IDOT instead initiated an investigation into whether Plaintiff's subordinates were content to work under his authority.

22. In January 2010, during Malek-Robinson's investigation of "personnel matters" at ETP, Plaintiff was informed that a subordinate employee was circulating a "petition" calling for his removal. He was also told that certain drivers were "gathering information" about him and that he would "gone from ETP" soon. On February 5, 2010 Plaintiff file an internal complaint of Discrimination/Harassment/Retaliation/ Hostile Work Place against Malek-Robinson with the Civil Rights Bureau although it was never investigated.

23. In February 2010, while Malek-Robinson's investigation was still ongoing, Plaintiff's supervisor Bob Duda sent Plaintiff an e-mail acknowledging that he had been asked by subordinate ETP employees to "write [Plaintiff] up" countless times ("I can't begin to tell you how many times") but had refused because Plaintiff "had [not] done anything to be written up for."

24. At the beginning of March 2010, Elbert Simon, the chief of IDOT's Bureau of Civil Rights, and Ellen Schanzle-Haskins, IDOT's chief legal counsel, called Plaintiff and asked him whether he would be willing to transfer from ETP to a position managing an IDOT maintenance yard, a job with greatly diminished responsibilities outside of IDOT's traffic division. Plaintiff declined to transfer.

25. Shortly thereafter, on or around March 22, 2010, Defendant Grunloh, IDOT's chief of staff, called Plaintiff and told him that he was being transferred to the maintenance yard over his opposition. Grunloh stated that the transfer would be "temporary and based on operational needs." The transfer list came out on February 23, 2010, and Plaintiff's name was not on the list as it should have been if the transfer was part of the normal course of business.

26. On information and belief, Defendant Grunloh, as well as IDOT employees Fulgenzi, Iacullo, Klemz and Malek-Robinson were all directly involved in the decision to transfer

5

Plaintiff out of ETP.

27. On information and belief, Hannig was either directly involved in the decision to transfer Plaintiff out of ETP or was informed of the decision by his chief of staff (Defendant Grunloh) and authorized the action.

28. At first, IDOT represented to Plaintiff that the move was based upon alleged "operational needs." However, this was a mere pretext with a racial motivation, i.e. to acquiesce to the demands of white subordinate employees for Plaintiff's removal from ETP. The pretextual nature of the "operational needs" explanation was evident, in part, by the fact that IDOT began interviewing the to fill the Lead/Lead Worker position that Plaintiff was forced to vacate, and on May 28, 2010 IDOT promoted a Caucasian male Mark Jercha into the Lead/Lead position formally held by Plaintiff.

29. The job leading the IDOT Kennedy maintenance yard had greatly diminished responsibilities from Plaintiff's previous position. Rather than supervising nine lead workers and dozens of drivers who act as first responders to accidents and incidents on the state's highways, Plaintiff supervised a 4 to 8 workers and one Lead Worker doing menial tasks such as picking up litter and cutting grass, group. Thus, despite the job title, which is "Lead/Lead," the new position was a demotion. The position also afforded inferior terms and conditions of employment in that Plaintiff had a lengthy commute to work (exceeding the 45min. limit of his union contract agreement).

30. In addition to diminished responsibilities, Plaintiff earned substantially lower pay in the maintenance yard which impacted his pension. While his Caucasian counterparts at ETP earned over 200hrs of overtime per month, unlike his position at ETP, Plaintiff had little or no opportunity to earn overtime pay at the maintenance yard. Consequently, Plaintiff lost thousands

of dollars each month in overtime wages.

31. When Plaintiff was transferred, IDOT, through its chief legal counsel, Ellen Schanzle-Haskins; chief of staff, Defendant Grunloh; and chief of the Civil Rights Bureau, Elbert Simon, promised that IDOT would pay him the equivalent of his lost overtime wages, even though he would be afforded no opportunity to work overtime.

32. After his "transfer," Plaintiff continued to protest the move and to inquire when he would be returned to the Lead/Lead position at ETP, since he had been told that the "transfer" was temporary. Pressed for a real explanation, IDOT completely backtracked from the pretextual "operational needs" explanation and told Plaintiff that the transfer was carried out because a threat had been made on his life. Specifically, he was told that IDOT had discovered a threat on Facebook that it was treating as a possible hate crime. IDOT had reported the threat to the Federal Bureau of lnvestigation (FBI) and instructed Plaintiff to contact the FBI to cooperate in its investigation.

33. Plaintiff contacted the FBI investigator Jeffrey B. Moore who told him that the threat consisted of the statement, in sum or substance, "Let's get rid of Marvin Harrison." On information and belief, the statement was made by a white subordinate ETP employee.

34. The FBI did not treat the threat as a real danger to Plaintiffs life and dismissed it altogether a week after Plaintiff was moved from ETP and notified IDOT in the same week.

35. Plaintiff continued to press for a return to his job, but IDOT Chief Counsel continued to insist that the reason Plaintiff was removed from his job was to "protect him" from the race-based threats. While at the same time from April, 2010 through May 17, 2010 Mr. Masterson, Mr. Iacullo, Mrs. Winesberry, Mr. Fulgenzi, Mr. Mahoney & Wilson of IDOT were telling Plaintiff during a union grievance hearing that plaintiff had been moved to the Kennedy

7

maintenance yard for operational needs and Plaintiff continued to be denied his rights.

Then on May 20, 2010, Ms. Schanzle-Haskins (IDOT's chief counsel) sent Plaintiff an e-mail stating: "As you know we transferred you ... for your safety due to threats on your life that are part of an FBI hate crimes investigation. If we know of threats we have an obligation to try to help you." A true and correct copy of the Ms. Schanzle-Haskins' e-mail is attached to the original Complaint and incorporated by reference herein.

36. Thus, IDOT removed Plaintiff from his Lead/Lead Worker position in response to race-based threats directed against him by one or more white subordinate employees and acquiesced to the demands of white subordinate employees for Plaintiff's removal rather than disciplining them.

37. On March 29, 2010, Plaintiff filed a charge of discrimination against IDOT with the EEOC seeking relief from the racially motivated adverse employment action. The EEOC issued Plaintiff a Dismissal and Notice of Rights. Subsequently, Plaintiff filed additional EEOC complaints alleging discrimination and retaliation based on related actions of the Defendant. The EEOC issued Plaintiff a Dismissal and Notice of Rights on those charges as well. *See attached.*

38. After filing his lawsuit Plaintiff was placed back into his original position after having been removed for six months and he received some back wages. He also received a 15 day suspension and other adverse action in retaliation for his protected activity. The suspension was reduced to three days after Plaintiff filed a grievance but according to Defendant's discipline system can be built on and used against him indefinitely.

**COUNT I**
**TITLE VII- RACE DISCRIMINATION**
**(AGAINST IDOT)**

39. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-38 as if fully set forth

herein.

40. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq., prohibits race discrimination in employment.

41. In the fall of 2009, IDOT failed to properly investigate the racial slurs lodged against the Plaintiff by a white subordinate employee in the presence of IDOT supervisors as well as failing to investigate Malek-Robinson.

42. Rather than taking action to enforce Plaintiff's federally protected rights and its own equal employment policies, IDOT instead acquiesced to demands and threats made by one or more white subordinate employees for Plaintiff's removal, transferring him to a lesser position in an IDOT maintenance yard.

43. The adverse employment action was explicitly motivated by Plaintiff's race.

44. The actions described above constitute adverse treatment in violation of Title VII of the Civil Rights Act

45. The actions described above were taken with malice or with reckless indifference to the Plaintiff's federally protected rights.

46. The Plaintiff has been harmed by the illegal discrimination, including but not limited to, suffering degradation, embarrassment, humiliation, emotional distress, and the loss of income, benefits and other incidentals of employment.

47. As a result of the Defendant's conduct, the Plaintiff is entitled to declaratory, injunctive, and monetary relief.

WHEREFORE, the Plaintiff prays that the Court grant him relief on Count I of his Complaint and that the Court:

A. Issue a declaratory judgment against Defendant IDOT, finding that Defendant violated the rights of Plaintiff under Title VII by removing him from his Lead/Lead Worker position at ETP and transferring him to the maintenance yard;

B. Award Plaintiff any outstanding back pay;

C. Award Plaintiff compensatory damages;

D. Order Defendant to pay prejudgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

E. Award Plaintiff his reasonable attorneys' fees, costs and expenses; and

F. Award such other and further relief as the Court deems just and proper.

## COUNT II
## TITLE VII RETALIATION
## (AGAINST IDOT)

48. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-47 as if fully set forth herein.

49. In retaliation for filing a complaint with the Bureau of Civil Rights about racial slurs directed against him as well as filing against Malek-Robinson, IDOT instigated an investigation into "personnel matters" at Plaintiff's department and removed Plaintiff from his post.

50. In retaliation for filing his EEOC charge and subsequent lawsuit Defendant IDOT has treated Plaintiff differently with regards to the terms and conditions of his employment by taking adverse action against him including but not limited to discipline for an occurrence for which similarly situated employees who have not engaged in protected activity have not been disciplined.

51. IDOT's retaliation violated Plaintiff's rights secured by Title VII.

WHEREFORE, the Plaintiff prays that the Court grant him relief on Count II of his Complaint and that the Court:

A. Issue a declaratory judgment against Defendant IDOT, finding that Defendant violated the rights of Plaintiff under Title VII by removing him from his Lead/Lead Worker position at ETP and transferring him to the maintenance yard in retaliation for his civil rights complaint;

B. Award Plaintiff any outstanding back pay and order Defendant to remove any discipline from his file;

C. Award Plaintiff compensatory damages;

D. Order Defendant to pay prejudgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

E. Award Plaintiff his reasonable attorneys' fees, costs and expenses; and

F. Award such other and further relief as the Court deems just and proper.

## COUNT III
## 42 U.S.C.§1981-RACE DISCRIMINATION
## (AGAINST DEFENDANT GRUNLOH IN HIS INDIVIDUAL CAPACITY)

52. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-52 as if fully set forth herein.

53. Through his actions described above, Defendant Grunloh engaged in intentional discrimination against Plaintiff based upon race in violation of his rights under 42 U.S.C. §1981.

54. The Plaintiff has been harmed by the illegal discrimination, including but not limited to, suffering degradation, embarrassment, humiliation, emotional distress, and the loss of income,

benefits and other incidentals of employment.

55. Defendant's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct by Defendant.

56. As a result of the Defendant's conduct, the Plaintiff is entitled to declaratory, injunctive, and monetary relief.

WHEREFORE, the Plaintiff prays that the Court grant him relief on Count III of his Complaint and that the Court:

A. Issue a declaratory judgment against the individual Defendants, finding that they violated the rights of Plaintiff under 42 U.S.C. §1981 by participating in his removal from his Lead/Lead Worker position at ETP and transferring him to the maintenance yard;

B. Award Plaintiff any outstanding back pay;

C. Award Plaintiff compensatory damages;

D. Award Plaintiff punitive damages to deter Defendant's wrongful future conduct;

E. Order Defendants to pay prejudgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

F. Award Plaintiff his attorneys' fees, costs and expenses; and

G. Award such other and further relief as the Court deems just and proper.

**COUNT IV**
**TITLE VII AND SECTION 1981-RETALIATION**
**(AGAINST DEFENDANT GRUNLOH IN HIS INDIVIDUAL CAPACITY)**

57. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-56 as if fully set forth

herein.

58. In retaliation for filing a complaint with the Bureau of Civil Rights about racial slurs directed against him as well as filing against Malek-Robinson, the Defendant instigated and participated in an investigation into "personnel matters" at Plaintiff's department and removed Plaintiff from his post.

59. Defendant's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct by Defendant.

60. Defendant's retaliation violated Plaintiff's rights secured by Section 1981.

WHEREFORE, the Plaintiff prays that the Court grant him relief on Count IV of his Complaint and that the Court:

A. Issue a declaratory judgment against the individual Defendants, finding that they violated the rights of Plaintiff under 42 U.S.C. §1981 by participating in his removal from his Lead/Lead Worker position at ETP and transferring him to the maintenance yard;

B. Award Plaintiff any outstanding back pay;

C. Award Plaintiff compensatory damages;

D. Award Plaintiff punitive damages to deter Defendant's wrongful future conduct;

E. Order Defendant to pay prejudgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

F. Award Plaintiff his attorneys' fees, costs and expenses; and

G. Award such other and further relief as the Court deems just and proper.

# COUNT V
# 42 U.S.C. §1983
# (AGAINST DEFENANT GRUNLOH IN HIS INDIVIDUAL CAPACITY)

61. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-60 as if fully set forth herein.

62. In committing the acts of race discrimination and retaliation described above, Grunloh acted under color of state law, as an employee of IDOT.

63. Grunloh directly participated and was personally involved in the discriminatory and retaliatory employment practices alleged herein.

64. In committing the acts of race discrimination and retaliation described above, Defendant Grunloh deprived Plaintiff of his federally protected rights under the Fourteenth Amendment while acting under color of state law.

65. Defendant's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct by Defendant.

WHEREFORE, the Plaintiff prays that the Court grant him relief on Count V of his Complaint and that the Court:

   A. Issue a declaratory judgment against the individual Defendant, finding that he violated the rights of Plaintiff under the Fourteenth Amendment by participating in his removal from his Lead/Lead Worker position at ETP and transferring him to the maintenance yard;

   B. Award Plaintiff any outstanding back pay;

   C. Award Plaintiff compensatory damages;

E. Award Plaintiff punitive damages to deter Defendant's wrongful future conduct;

F. Order Defendant to pay prejudgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

G. Award Plaintiff his attorneys' fees, costs and expenses; and

H. Award such other and further relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues for which a jury trial is allowed.

Respectfully submitted,

MARVIN HARRISON
/s/Justin G. Randolph
Attorney for Plaintiff
53 W. Jackson Blvd., Suite 602
Chicago, IL 60604
(312) 663-1560